# UNITED STATES DISTRICT COURT
# FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN M. THOMPSON, :
:
        Petitioner, :
: CIVIL NO. 3:CV-05-2102
        v. :
: (JUDGE VANASKIE)
SUPERINTENDENT GRACE, ET AL., :
:
        Respondents. :

## M E M O R A N D U M

**I.  Introduction.**

      Petitioner Brian Thompson, an inmate formerly confined at the State Correctional Institution at Huntingdon, Pennsylvania, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that his plea counsel was ineffective.  Thompson alleges he was improperly induced to enter a straight plea of guilty to several criminal charges based on erroneous sentencing information provided to him by his attorney.  Thompson argues that, but for his counsel's ineffectiveness, he would have elected to proceed to trial.  Having carefully considered Thompson's claim, I will deny the habeas petition.

**II.  Factual and Procedural Background.**

      The facts underlying Thompson's claim were summarized by the Pennsylvania

Superior Court as follows:

> On March 4, 2002, [Thompson] entered a straight plea of guilty to the charges of burglary, theft by unlawful taking, receiving stolen property, and forgery.  The trial court scheduled [Thompson's] sentencing for April 8, 2002, and requested a pre-sentence report. When [Thompson] appeared for sentencing on April 8, 2002, he discovered that the pre-sentence report indicated that the burglary charge carried an offense gravity score of nine. [Thompson] argued, however, that the proper offense gravity score for the burglary charge was seven because the premises were unoccupied.   The trial court continued [Thompson's] sentencing hearing to April 11, 2002, at which time the trial court ruled that the burglary charge carried an offense gravity score of nine because someone entered the building during [Thompson's] commission of the crime. [Thompson] then sought to withdraw his guilty plea, and the trial court denied his request.  The trial court appointed new counsel, and, on April 22, 2002, [Thompson] filed a "Request for Reconsideration of Sentence and/or to Withdraw Guilty Plea."  On May 2, 2002, the trial court conducted a hearing on [Thompson's] post-sentence motion.  On August 6, 2002, the trial court denied [Thompson's] motion for reconsideration and his request to withdraw his guilty plea.

(Dkt. Entry 12-3, Commonwealth v. Thompson, No. 1366 MDA 2002, 835 A.2d 837  (Pa. Super. Sept. 26, 2003)(unpublished memorandum at 1-2).).

Prior to entering his guilty plea in open court, Thompson completed a written guilty plea colloquy form.  (Dkt. Entry 8-7, at 35-44, Guilty Plea Colloquy dated 03/03/2002.) Petitioner initialed each page of the form, indicating he read and understood each page.  (Id.) Thompson admitted that he "did all the things a person must have done in order to be held to be guilty of the crime or crimes to which" he entered his guilty pleas.  (Id. at 38.)  Petitioner

acknowledged that, by pleading guilty, "the Court may impose a sentence in accordance with the Sentencing Guidelines established by the legislature of the Commonwealth of Pennsylvania that place a suggested length of sentence for the type of crime." (Id. at p. 40.)  Thompson recognized "that the maximum sentence or sentences of confinement and/or fine or fines applicable to the crime or crimes to which he [was entering his] plea(s)" could result in the "total possible aggregate sentence" of 66 years. (Id.)   Petitioner acknowledged that as to the burglary charge alone the maximum possible term of confinement was 20 years.  (Id.)  Petitioner disclaimed the existence of any agreement with the Assistant District Attorney, or his counsel, concerning the length of sentence he would receive as to any charge in return for his pleading guilty.  (Id. at 41.)  Thompson affirmed that he entered the plea on his own free will. (Id. at 42.)

On March 4, 2002, prior to Petitioner entering his guilty plea to all charges, Judge Blackwell of the York County Court of Common Pleas questioned Thompson as to his understanding of his intended plea.  (Dkt. Entry 8-2, Tr. of Plea Colloquy.)  Specifically, Judge Blackwell advised Petitioner as to the potential maximum sentence he could receive for each individual offense to which Thompson was entering a guilty plea.  (Id. at 2 - 3.)  Petitioner affirmed that he understood the burglary charge alone carried the potential of a 20 year prison term.  Judge Blackwell advised, and Thompson acknowledged, that the aggregate sentence he potentially faced as a result of his plea to all charges was "between 35 and 40 years".  (Id. at 3.)

-3-

The Court then proceeded to outline the factual foundation of each crime, and asked Petitioner to verify that he committed each offense as charged. (Dkt. Entry 8-3 at 2-3, 13-14.) As to the burglary charge, Thompson admitted entering the home of Greg Sowers without his permission and taking money from the premises. (Id. at 3.) The Court then accepted Thompson's plea of guilty to all charges. (Id. at 14.)

On April 8, 2002, after the completion of a pre-sentence investigation, Thompson appeared before Judge Blackwell for sentencing. (Dkt. Entry 8-3 at 20, Sentencing Tr. 04/08/02.) At the commencement of the proceeding, Thompson's attorney, Heather Reynosa, contested the offense gravity score assigned to the burglary charge. (Id. at 4.) She stated that "[w]hen my client plead to these offenses and agreed to be sentenced, we believed the offense gravity score was a 7. And it has come back and it appears as a 9." (Id.) The enhancement was based on a finding that someone was present during the commission of the burglary. (Id. at 5.) The Court then entertained a lengthy argument as to whether Mr. Sower's twelve year old neighbor, who observed Thompson enter the apartment via a window, and then entered the apartment herself by the same means to confront Thompson, qualified as a person present during the commission of the burglary. (Id. at 5-8.) The state trial court deferred sentencing to consider the parties' various arguments. (Id. at 8.)

The sentencing hearing was reconvened on April 11, 2002. (Dkt. Entry 12-2, Sentencing Transcript 04/11/02.) Judge Blackwell rejected Petitioner's position on the offense

gravity score. (Id. at 5.) Petitioner then, against the advice of counsel, requested leave to withdraw his guilty plea. The Commonwealth objected. (Id. at 5-6.) While acknowledging that Thompson entered his plea "with no agreement," Attorney Reynosa asserted that she had been led to believe that Thompson's offense gravity score would be seven because the Commonwealth had previously offered a prison term of two to four years, a term of imprisonment consistent with that offense gravity score. She also explained that she had assured Thompson regarding that sentencing range and "told him that he could receive <u>more than</u> two to four, but we never discussed the offense gravity score of nine." (Id. at 6; emphasis added.)

   The trial judge denied Thompson's motion to withdraw his guilty plea, noting that Thompson entered a "straight plea," and that even though there may have been negotiations "on the side, a straight plea is exactly that." (Id.) The trial court imposed a sentence of 60 to 180 months incarceration for case 4462 CA 2001 (burglary, theft and receiving stolen property). (Dkt. Entry 8-1at 2, Response to the Petition for Writ of Habeas Corpus.) He received concurrent sentences of 12 to 24 months in the other two cases. (Id.)

   On May 2, 2002, the Court appointed Thompson new counsel (Attorney Campbell), and held a hearing on Petitioner's renewed request to withdraw his guilty plea based on erroneous information provided by his counsel as to the offense gravity score. (Dkt. Entry 12-4, Tr. of 5/2/02 hearing.) Petitioner stated that, had he known his score would be 9,

-5-

and not 7, he would have accepted the Commonwealth's earlier plea offer of 2 to 4 years or proceeded to trial. (Id. at 8-9.)  Petitioner, without elaboration, also expressed concern that a score of 9 placed him into a "violent offender category" within the state prison system, even though he had "no history of any kind of violent crimes." (Id. at 10 and 16.)

On cross-examination, Thompson did not dispute that he committed the crimes as charged. (Id. at 17.)  Petitioner testified that he "breezed over" the written plea colloquy without reading it, and really didn't understand it.  He did, however, admit that he understood that the cumulative maximum sentence he could receive for the various charges was 66 years imprisonment. (Id. at 19.)  Thompson admitted that he understood he would enter a straight plea of guilty, and that there was no agreement in place as to the specific length of sentence he would receive. (Id. at 20.)  He also acknowledged that he did not attempt to withdraw his guilty plea until after the trial court ruled against him on the offense gravity score issue. (Id. at 21-24.)

Attorney Reynosa's testimony at the hearing affirmed that, prior to receiving the pre-sentence investigative report, she thought Thompson's offense gravity score would be 7. (Id. at 38.)  Attorney Reynosa believed the Commonwealth's plea offer of two to four years was consistent with a score of 7. (Id.)  Attorney Reynosa conveyed Thompson's disbelief and anger upon learning of the elevated score. (Id. at 40.)  She testified that, prior to Thompson entering his plea, she explained to him the meaning of a straight plea.  She advised him that all previous deals would be "off the table," and that the Commonwealth's prior offer of "two to four [years]

would not be an option." (Id. at 41.)  Reynosa stated she counseled Petitioner as to the maximum sentence he could receive for each offense, and that "the Court has the discretion to follow the standard range, but they can also go above and beyond and then your maximum can go up as high as the maximum on the offense." (Id.)

On August 6, 2002, the court entered an Opinion and Order denying Thompson's request to withdraw his guilty plea. (Dkt. Entry 8-7 at 45-50.) The trial judge wrote that, while the offense gravity score may have changed from 7 to 9, "affect[ing] the range [of Thompson's] sentence, [it] did not affect the maximum sentence he could receive" under the terms of his straight plea. (Id. at 45-46.)  The court found that Thompson verbally acknowledged in open court the maximum range of sentences and fines he could receive, and confirmed the same in the written colloquy. (Id.)  The court held that Petitioner was fully aware that he entered a straight plea, that there was no agreement as to his sentence or offense gravity score, and "that it was within the Court's discretion as to the sentence" he would receive. (Id. at 47.) Relying upon state law, the court affirmed its earlier decision not to allow Thompson to withdraw his guilty plea as he did not make "a showing of prejudice that results in a manifest injustice." (Id.) The Court also based its decision on the fact that Thompson previously had rejected the Commonwealth's bottom of the standard sentencing range offer, 24 to 30 months, and that he fully admitted to committing the crimes to which he pled guilty. (Id.) The court determined that Attorney Reynosa's performance was not deficient and that Thompson's pleas were tendered

knowingly, intelligently and voluntarily.  (Id.)

On August 28, 2002, Petitioner filed a Notice of Appeal to the Superior Court of Pennsylvania, asserting that the trial court should have permitted him to withdraw his guilty plea because it was based on improper information provided by counsel as to the grading of the burglary offense.  On September 26, 2003, the Superior Court affirmed Petitioner's conviction and sentence, finding:  (1) Thompson "was advised by the trial court that he could receive up to 20 years in prison and a fine of up to $25,000 for the burglary offense"; (2) he had "signed a written guilty plea colloquy acknowledging that he understood that he could be sentenced to a maximum term of 20 years in prison for the burglary offense and a total aggregate sentence up to 66 years for all of the offenses to which he pled guilty;" and (3) "even if [Thompson's] counsel was ineffective in failing to advise [him] prior to the entry of his guilty plea that the burglary offense carried an offense gravity score of nine, [Thompson] . . . entered his plea 'with full knowledge of the maximum punishment that might be imposed.'" (Dkt. Entry 12-3, Commonwealth v. Thompson, No. 1366 MDA 2002, 835 A.2d 837  (Pa. Super. September 26, 2003)(unpublished memorandum at 7)).

On February 24, 2004, the Supreme Court of Pennsylvania denied Allowance of Appeal.  See Commonwealth v. Thompson, 577 Pa. 688, 844 A.2d 553 (Pa. 2004)(Table, No. 856 MAL 2003).  On July 6, 2004, Thompson filed a Post Conviction Relief Act ("PCRA") Petition, raising "the ineffectiveness of Attorney Reynosa, under federal law, in advising him

that his offense gravity score would be seven, and of Attorney Campbell in failing to preserve on direct appeal Attorney Reynosa's ineffectiveness under federal law."

On August 16, 2004, a PCRA hearing was held before Judge Blackwell. (See Dkt. Entry 8-7 at 51, PCRA Hearing Tr..) Petitioner raised a "layered" ineffective assistance claim founded strictly upon federal law. (Id. at 52.) Thompson did not seek to re-litigate any state law claims. Petitioner argued that his appellate counsel (Attorney Campbell) failed to preserve his federal rights concerning Attorney Reynosa's ineffectiveness on direct appeal, and, therefore, he too provided ineffective assistance of counsel. The PCRA court disagreed, finding that the issue of Attorney Reynosa's alleged ineffectiveness in relation to the offense gravity score had been litigated and addressed by the Superior Court in connection with Thompson's direct appeal of his judgment of sentence. (Id. at 52-53.)

On September 16, 2004, Thompson filed a Notice of Appeal. The Superior Court, in a non-precedential opinion issued on July 26, 2005, held:

> In the present case, the claim underlying Thompson's arguments in this appeal is that his guilty plea counsel, Attorney Reynosa, was ineffective in advising him that the offense gravity score for the burglary charge would be seven. The claim was thoroughly litigated and discussed by this Court in Thompson's direct appeal of the judgment of sentence. See Commonwealth v. Thompson, 835 A.2d 837 (Pa. Super. 2003)(unpublished memorandum). In his PCRA Petition, Thompson is attempting to re-litigate the same claim, using a different theory of relief. As such re-litigation under a different theory of relief is not permitted, we conclude that the issues raised in Thompson's PCRA Petition, and in the present appeal, have been previously litigated under section 9544(a) of the

-9-

>> PCRA.  Thus, Thompson is not entitled to relief, and the PCRA
>> court did not err in dismissing his Petition.

(Dkt. Entry 8-7 at 67, Commonwealth v. Thompson, No. 1553 MDA 2004 (Pa. Super. 2005).)

In rejecting Thompson's contentions, the court observed that Pennsylvania law on ineffective assistance of counsel claims is materially indistinguishable from federal law, thus obviating further consideration of his claim that his appellate counsel had been ineffective in not preserving an ineffective assistance claim based upon federal law.

On October 14, 2005, Thompson filed a habeas corpus petition in this Court. Respondent has filed a response (Dkt. Entry 8) and, on April 30, 2007, a supplemental response (Dkt. Entry 12) to the petition.  The matter is ripe for decision.

### III.    Standard of Review.

An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  As explained in Harrington v. Gillis, 456 F.3d 118, 124 (3d Cir. 2006):

> [A] state court decision is "contrary to" clearly established federal law if "the state

court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law, or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.1999) (for a decision to be "contrary to" federal law, "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court"). A state court decision represents an unreasonable application of federal law where "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. 1495.

Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 411.

Under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A habeas petitioner must present clear and convincing evidence to rebut this presumption of correctness.  See 28 U.S.C. §2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 341, (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).  This presumption of correctness applies to both explicit and implicit findings of fact.  Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).

**IV.**     **Discussion.**

The sole issue raised in Thompson's habeas petition is that he was denied

effective assistance of counsel in his plea proceedings. Petitioner contends he relied upon inaccurate information presented to him by his plea counsel as to his anticipated offense gravity score when he decided to enter a straight plea of guilty to the various criminal charges. (Dkt. Entry 1, Habeas Petition, at 4.) Thompson argues that, but for Attorney Reynosa's inaccurate information as to the offense gravity score, he would not have waived his right to a jury trial. (Id. at 7.)

Counsel is ineffective if the defendant can show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). Where a criminal defendant enters a guilty plea upon the advice of counsel, the voluntariness of that plea can depend on whether "counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985). The Strickland test is to be applied to challenges to guilty pleas based on ineffective assistance of counsel. Id. at 57. However, in the context of a challenge to a guilty plea, to satisfy the Strickland prejudice requirement, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

The Pennsylvania Superior Court addressed Thompson's ineffective assistance claim on the merits on his direct appeal from his conviction and concluded that the

representation provided to Thompson did not fall below an objective standard of reasonableness. This finding was based upon the plea colloquy, during which Thompson explicitly acknowledged the maximum prison term that he faced and that his straight plea did not assure him of any particular sentence. In this regard, the record shows that Thompson understood that he would enter his plea and then a presentence investigation would be conducted. Petitioner's plea of guilty to each offense was made with full knowledge and understanding of the nature of each offense and the full range of potential punishments the Court could impose for each offense. He was not induced to enter the plea by a promise of a set term of incarceration made by either the prosecution or his own counsel. He freely acknowledged that he was exposed to a period of incarceration in excess of 60 years. His attorney indicated, without contradiction, that she had told him that he could receive a sentence of more than the 2 to 4 years offered in plea bargain negotiations. The state courts had an ample basis for finding that Petitioner entered a knowing and voluntary plea. Thus, Petitioner's argument that Ms. Reynosa somehow mislead or promised him he would receive an offense gravity score of 7, or a sentence of 2 to 4 years, is entirely foreclosed by the record. That is, as was already noted, the Petitioner within in his Written Plea Colloquy and his open court plea colloquy, acknowledged he had committed the various crimes and agreed as to the Court's ability to sentence him up to a maximum term of 20 years for the burglary offense alone, and a total aggregate sentence of up to 66 years. Thompson received an aggregate sentence of 5 to

15 years incarceration, which clearly falls within the possible sentencing range he understood he could receive.  While Thompson may have hoped for, or even expected, a lighter sentence had a lower offense gravity score pertained, he was fully aware of his full sentencing exposure prior to entering his straight plea of guilty.

Courts have rejected ineffective assistance claims in similar settings.  For example, in Jones v. United States, 131 Fed. Appx. 819, 821-22 (3d Cir. 2005), our Court of Appeals held that a collateral challenge to the validity of a guilty plea based upon allegedly erroneous sentencing advice was properly rejected where the plea colloquy established the defendant's awareness of the maximum prison term he faced and he was sentenced within that maximum term.  In United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999), cited with approval in Jones, the court ruled that the "'mere inaccurate prediction of a sentence' does not demonstrate the deficiency component of an ineffective assistance of counsel claim.'" In Bekes v. Rozum, No. 1:CV-05-2554, 2007WL 1074245, at *2-4 (M.D. Pa., April 5, 2007), Judge William W. Caldwell of this Court held that the Pennsylvania Superior Court's rejection of an ineffective assistance claim based upon allegedly improper sentencing advice in a guilty plea context was not an unreasonable application of Supreme Court precedent.  Central to Judge Caldwell's conclusion was the state court record that demonstrated the defendant's knowledge of the potential sentence he faced.  Similarly, in Carter v. Carroll, 479 F. Supp. 2d 432, 437-38 (D. Del. 2007), Chief Judge Sue L. Robinson found that the deference accorded a state court's

reliance upon a plea colloquy in rejecting an ineffective assistance claim founded upon sentencing assurances required dismissal of the same claim presented in a habeas petition.

As in the cases cited above, the record in this case afforded an ample basis for the state court's conclusion that Thompson's plea was knowing and voluntary, and not the product of ineffective assistance of counsel. Moreover, Thompson is not able to satisfy the prejudice prong of the ineffective assistance inquiry.

Thompson states that he relied upon inaccurate information provided by counsel as to his anticipated offense gravity score when he elected to forego a jury trial and enter a straight guilty plea to the various charges. Such a statement, however, cannot in and of itself sustain an ineffectiveness of counsel claim. See Powell v. Meyers, 214 Fed. Appx. 197, 200 (3d Cir. 2007) (citing Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's errors he would have pleaded not guilty and gone to trial.")). Our Court of Appeals has held that a habeas petitioner claiming his plea was induced by ineffective assistance of counsel cannot satisfy the prejudice prong of the Strickland test where "the record is 'replete with evidence of petitioner's guilt.'" United States v. Wilder, 204 Fed Appx. 146, 149 (3d Cir. 2006). In this regard, Thompson has never asserted that he was innocent of the charges, and freely conceded guilt during the state court proceedings. Under these circumstances, he cannot maintain a habeas corpus challenge to his guilty plea based

upon allegedly erroneous sentencing advice.

An appropriate Order follows.

                                                         **s/ Thomas I. Vanaskie**
                                                         Thomas I. Vanaskie
                                                         United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRIAN M. THOMPSON,** : | |
| : | |
| Petitioner, : | |
| : | **CIVIL NO. 3:CV-05-2102** |
| v. : | |
| : | **(JUDGE VANASKIE)** |
| **SUPERINTENDENT GRACE, ET AL.,** : | |
| : | |
| Respondents. : | |

# O R D E R

**AND NOW**, this **26th** day of **JUNE, 2007**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. The petition under 28 U.S.C. § 2254 is **DENIED**.

2. A certificate of appealability is **DENIED**.

3. The Clerk of Court shall mark this matter **CLOSED.**

                                            **s/ Thomas I. Vanaskie**
                                            Thomas I. Vanaskie
                                            United States District Judge